UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: _____

| | |
|---|---|
| **MARCIA BALTODANO**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **MARRIOTT INTERNATIONAL, INC.** d/b/a Sheraton Miami Airport Hotel & Executive Meeting Center d/b/a The Ritz Carlton, a Maryland Corporation; **THE RITZ-CARLTON HOTEL COMPANY, L.L.C.** d/b/a The Ritz Carlton, a Maryland Company; and **HERSHA HOSPITALITY MANAGEMENT, LP** a/k/a HERSHA HOSPITALITY TRUST, a Pennsylvania Company, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff MARCIA BALTODANO (the "Plaintiff") sues Defendants **MARRIOTT INTERNATIONAL, INC.** d/b/a Sheraton Miami Airport Hotel & Executive Meeting Center d/b/a The Ritz Carlton, a Maryland Corporation; **THE RITZ-CARLTON HOTEL COMPANY, L.L.C.** d/b/a The Ritz Carlton, a Maryland Company; and **HERSHA HOSPITALITY MANAGEMENT, LP** a/k/a HERSHA HOSPITALITY TRUST, a Pennsylvania Company (collectively, the "Defendants"), and alleges:

## JURISDICTION AND VENUE

1. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); the Florida Civil Rights Act, § 760.10, Fla. Stat. *et seq.* ("FCRA") and Florida common law.

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(3) and (4) and 28 U.S.C. § 1367(a). The jurisdiction of the Court is further invoked to secure protection for and to redress the deprivation of rights secured by Title VII and the FCRA.

3. Venue is proper under 28 U.S.C. § 1391(b) because the acts complained of by Plaintiff occurred within this judicial district and because the Defendants conduct substantial business within this district.

## PARTIES

4. Plaintiff is a woman and a resident of Miami-Dade County, Florida.

5. Plaintiff, at all times relevant, was an "employee" of the Defendants as defined by Title VII and the FCRA.

6. Defendant MARRIOTT INTERNATIONAL, INC. d/b/a Sheraton Miami Airport Hotel & Executive Meeting Center d/b/a The Ritz Carlton ("Marriott") is a multinational corporation headquartered in Maryland. Marriott owns and operates multiple hotel properties around the world, including the Ritz-Carlton Hotel in South Beach, Florida and the Sheraton Miami Airport Hotel and Executive Center in Miami, Florida. Marriott has offices and conducts substantial business in Miami-Dade County, Florida.

7. THE RITZ-CARLTON HOTEL COMPANY, L.L.C. d/b/a The Ritz Carlton ("Ritz") is a Maryland company with offices and conducting substantial business in Miami-Dade County, Florida.

8. Marriott is the parent company of Ritz. Ritz is a subsidiary of Marriott. Marriott owns and operates Hotels through Ritz, including the Ritz-Carlton Hotel in South Beach, Florida where Plaintiff worked between 2013 and 2015. Marriott and Ritz conduct interrelated operations, including the management of the Ritz-Carlton Hotel in South Beach, Florida during the relevant time period.

9. HERSHA HOSPITALITY MANAGEMENT, LP a/k/a HERSHA HOSPITALITY TRUST ("Hersha") is a Pennsylvania company that owns and manages several hotels in the United States. Hersha manages several hotel properties for Marriott pursuant to joint venture agreements. During the relevant time period, Hersha managed the Sheraton Miami Airport Hotel and Executive Center for Marriott. Hersha has offices and conducts substantial business in Miami-Dade County, Florida.

10. At all times relevant, Hersha was involved in the management of employees for Marriott. Hersha managed Plaintiff's terms of employment for Marriott.

11. Defendants share common ownership, common management, centralized control of labor relations, common offices, and interrelated operations. Defendants operate as an integrated enterprise.

12. Defendants share employees or interchange employees; work in the direct interest of one another; and their employees are in the common control of all Defendants. Defendants are joint employers.

13. At all times relevant and material, each Defendant employed more than 15 employees and was Plaintiff's employer within the meaning of Title VII and the FCRA.

## PROCEDURAL REQUIREMENTS

14. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

15. On or about August 17, 2021, the EEOC issued a Right to Sue Letter. The instant action is being filed within 90 days from receipt of the Right to Sue Letter.

16. More than 180 days have passed from the time Plaintiff filed her charge of discrimination.

17. All conditions precedent have been satisfied, waived, or excused before the filing of this lawsuit.

## GENERAL ALLEGATIONS

18. Plaintiff worked for Ritz as a banquet server in a hotel in South Beach, Florida from approximately 2013 through her termination in 2015.

19. Marriott directly or indirectly owned, operated, and managed Ritz's hotel where Plaintiff worked as a banquet server in South Beach.

20. Plaintiff complained about sexual harassment and discrimination against Ritz.

21. On or about March 2015, Ritz terminated Plaintiff.

22. In January 2017, Plaintiff was able to get a job as a banquet server at another hotel directly or indirectly owned, operated, and managed by Marriott: the Sheraton Miami Airport Hotel & Executive Meeting Center (the "Sheraton Hotel").

23. Hersha, pursuant to a joint venture agreement with Marriott, managed the employees working at the Sheraton Hotel, including Plaintiff, for the benefit of Marriott.

24. On or about October 31, 2018, Plaintiff officially filed a lawsuit against Ritz alleging sexual harassment and discrimination under Title VII and the FCRA (the "Lawsuit").

4

25. Marriott knew or should have known about the Lawsuit.

26. On or about mid to late September of 2019, Plaintiff learned that Marriott, through Ritz, wanted Plaintiff to settle the Lawsuit and to quit her job at the Sheraton Hotel. Marriott wanted to get rid of Plaintiff at all costs. Marriott could not stand the idea that an employee that sued a subsidiary of Marriott (Ritz) could still remain employed under the Marriott umbrella at a different location (the Sheraton Hotel).

27. Plaintiff refused to quit her job at the Sheraton Hotel.

28. On or about October 16, 2021, Ritz, and each of its parents, subsidiaries and divisions, settled all of Plaintiff's claims against Ritz and each of its parents, subsidiaries and divisions and allowed Plaintiff to continue to be employed at the Sheraton Hotel.

29. Marriott very much disliked having Plaintiff to continue to be employed at its property, the Sheraton Hotel. Marriott still very much wanted to get rid of Plaintiff.

30. While the settlement agreement in the Lawsuit was being negotiated, or soon after its execution, Defendants were in communication regarding Plaintiff. They discussed with each other about the fact that Plaintiff had sued the Ritz, a subsidiary of Marriott; about the fact that the settlement in the Lawsuit had benefited all Defendants, including Marriott, the parent company; and about the fact that Plaintiff very much continued to be fully employed by Marriott, through Hersha. Defendants considered Plaintiff's continued employment at the Sheraton Hotel to be offensive.

31. On or about October 21, 2019, Defendants terminated Plaintiff's employment.

## COUNT I: VIOLATION OF TITLE VII – <u>RETALIATION</u>

32. Plaintiff re-states and re-alleges paragraphs 1 through 31 as if set forth in full herein.

33. Defendants terminated Plaintiff or caused Plaintiff's termination because she opposed gender discrimination when she filed the Lawsuit, when she settled the Lawsuit and when she refused to quit her job at the Sheraton Hotel.

34. Defendants' actions against Plaintiff, as stated herein, were motivated by an intent to retaliate against Plaintiff for her opposition to gender discrimination under Title VII.

35. Defendants willfully violated Title VII or acted with reckless disregard for whether their actions were prohibited.

36. As a direct and proximate result of the intentional violations by Defendants, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

37. Furthermore, as a direct and proximate result of such actions by Defendants, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendants' conduct.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

   a. Enter judgment in Plaintiff's favor and against Defendants for their violations of Title VII;

   b. Award Plaintiff actual damages suffered, including lost wages, loss of fringe benefits, and other damages;

   b. Award Plaintiff compensatory damages under Title VII for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

   d. Award Plaintiff liquidated damages based on Defendants' willful and/or reckless conduct;

    e.   Award Plaintiff prejudgment interest on her damages award;

    f.   Award Plaintiff reasonable costs and attorney's fees; and

    g.   Grant Plaintiff such other and further relief as this Court deems equitable and just.

## COUNT II: VIOLATION OF THE FCRA – RETALIATION

38. Plaintiff re-states and re-alleges paragraphs 1 through 31 as if set forth in full herein.

39. Defendants terminated Plaintiff or caused Plaintiff's termination because she opposed gender discrimination when she filed the Lawsuit, when she settled the Lawsuit and when she refused to quit her job at the Sheraton Hotel.

40. Defendants' actions against Plaintiff, as stated herein, were motivated by an intent to retaliate against Plaintiff for her opposition to gender discrimination under the FCRA.

41. Defendants willfully violated the FCRA or acted with reckless disregard for whether their actions were prohibited.

42. As a direct and proximate result of the intentional violations by Defendants, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

43. Furthermore, as a direct and proximate result of such actions by Defendants, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendants' conduct.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

    a.   Enter judgment in Plaintiff's favor and against Defendants for their violations of the FCRA;

    b.   Award Plaintiff actual damages suffered, including lost wages, loss of fringe benefits, and other damages;

      b. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

      d. Award Plaintiff liquidated damages based on Defendants' willful and/or reckless conduct;

      e. Award Plaintiff prejudgment interest on her damages award;

      f. Award Plaintiff reasonable costs and attorney's fees; and

      g. Grant Plaintiff such other and further relief as this Court deems equitable and just.

## COUNT III: FRAUD IN THE INDUCEMENT

44. Plaintiff re-states and re-alleges paragraphs 1 through 31 as if set forth in full herein.

45. On or about October 16, 2019, Defendants offered Plaintiff continued employment at the Sheraton Hotel as long as Plaintiff agreed to entered into a written settlement agreement with Ritz, its parents, divisions, and subsidiaries, including Marriott and Hersha (the "Settlement Agreement").

46. Defendants' representation that Plaintiff would have a job after she signed the Settlement Agreement was false because Defendants did not intend to keep Plaintiff employed and, in fact, Defendants intended to fire Plaintiff soon after Plaintiff signed the Settlement Agreement.

47. Defendants made the above representation knowing it to be false or with reckless disregard as to its truth or falsity, with the intent to fraudulently induce Plaintiff to rely on the representation to enter into the Settlement Agreement.

48. Defendants' representation as to actions Defendants would take in the future was made with the present intent not to perform.

49. Defendants' representation was material to Plaintiff's decision to sign the Settlement Agreement.

50.     Plaintiff reasonably relied on Defendants' representation in deciding to sign the Settlement Agreement. Plaintiff did not know that the representation was false and had no reasonable independent means of ascertaining its truth or falsity.

51.     Plaintiff would not have settled the Lawsuit if she knew that Defendants planned to fire her pretty much as soon as the Settlement Agreement was fully executed.

52.     As the direct and proximate result of reliance on Defendants' representation, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages for lost income, compensatory damages, pre-judgment interest, court costs, punitive damages, and for any and all other relief that this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated:  October 27, 2021.

Respectfully submitted,

**By: /s/ R. Martin Saenz**
R. Martin Saenz, Esq.
Fla. Bar No.: 0640166
E-Mail: msaenz@saenzanderson.com

Tanesha W. Blye, Esq.
Fla. Bar No.: 738258
E-Mail: tblye@saenzanderson.com

Aron Smukler, Esq.
Fla. Bar No.: 297779
E-Mail: asmukler@saenzanderson.com

SAENZ & ANDERSON, PLLC
20900 N.E. 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549

*Trial Counsel for Plaintiff*

10